243 P.3d 21 (2010)
2010 OK 81
In the Matter of C.D.P.F., an alleged deprived child.
JoAnna Daniels, Appellant,
v.
State of Oklahoma, Appellee.
No. 106,193.
Supreme Court of Oklahoma.
November 16, 2010.
*22 Eric R. Jones, Eric R. Jones Law Office, Ardmore, OK, for Appellant.
Craig Ladd, District Attorney, and Heather J. Russell Cooper, Assistant District Attorney, Ardmore, OK, for Appellee.
WINCHESTER J.
¶ 1 This appeal arises from a jury trial that culminated in a judgment terminating the parental rights of Mother, JoAnna Daniels, to her minor daughter C.D.P.F. On June 11, 2007, while searching a home for suspected drug use, DHS and local police found C.D.P.F., a then nine month old infant, crying in the home. A female resident informed the DHS worker that the infant's mother was not in the home but had been staying there and had left the infant there to run an errand. Mother returned to the house two hours later. A search of the car Mother was driving, as well as her purse, both yielded drug substances. Mother was arrested for *23 felony possession of methamphetamines and C.D.P.F. was taken into DHS custody.[1] Mother failed a drug test at this time.
¶ 2 The proceedings against Mother were initiated by the State on June 18, 2007, with a petition to adjudicate C.D.P.F. as a deprived child. The petition alleged, inter alia, that Mother could not properly provide a safe, stable home because she was homeless; that Mother used illegal drugs; that Mother left the child with inappropriate caregivers; and that the parents engaged in domestic violence in the presence of the child.[2] The trial court found C.D.P.F. to be deprived and at a disposition hearing on July 26, 2007, the trial court provided Mother with a list of conditions she had to complete to have C.D.P.F. returned to her custody. Among the court-ordered conditions were that Mother must complete a substance abuse treatment program, that she must not use drugs and that she submit to random drug tests at the request of DHS.[3]
¶ 3 During the ensuing months, Mother failed two additional tests and refused several others. Mother denied the use of drugs and testified she believed the results were false positives. There was conflicting evidence regarding Mother's attendance at an out-patient substance abuse program; however, Mother admitted that after testing positive in January 2008, a program counselor indicated to her that she needed to seek in-patient therapy. Mother's DHS workers also requested Mother attend an in-patient treatment program. Mother refused, continuing to deny drug use and indicating that if she were to attend in-patient treatment she would lose her rental residence. Mother claims to have paid for her own hair follicle drug tests, one of which came back positive and a subsequent test which was negative.
¶ 4 On May 15, 2008, the State sought to terminate Mother's parental rights on the grounds that Mother had failed to correct the conditions which led to the adjudication of C.D.P.F. as deprived, even though Mother had been given in excess of three (3) months to correct the conditions. The State also urged the termination was in the child's best interests. A jury trial was held and the jury rendered a verdict for termination. On July 24, 2008, the trial court entered judgment consistent with the jury's verdict and Mother appealed this ruling. A divided Division IV of the Court of Civil Appeals reversed the finding of the trial court and certiorari was granted to review their opinion.

STANDARD OF REVIEW
¶ 5 In parental termination cases, the State must show by clear and convincing evidence that the child's best interest is served by the termination of parental rights. In the Matter of C.G., 1981 OK 131, ¶ 17, 637 P.2d 66, 70-71. Our case law provides that clear and convincing evidence is the measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established. In the Matter of the Adoption of L.D.S., 2006 OK 80, ¶ 11, 155 P.3d 1, 4, quoting In re C.G., 1981 OK 131, ¶ 17 n. 12, 637 P.2d 66, 71 n. 12. This standard of proof "balances the parents' fundamental freedom from family disruption with the state's duty to protect children within its *24 borders." In the Matter of Adoption of L.D.S., 2006 OK 80, ¶ 11, 155 P.3d 1, 4, quoting In re C.G., 1981 OK 131, ¶ 17, 637 P.2d at 70.
¶ 6 Likewise, our review on appeal must find the presence of clear and convincing evidence to support the trial court's decision. In the Matter of S.B.C., 2002 OK 83, ¶ 7, 64 P.3d 1080, 1082. We must canvass the record to determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. In the Matter of S.B.C., 2002 OK 83, ¶ 6, 64 P.3d 1080, 1081. Our appellate review does not require a re-weighing of the evidence presented at trial.

ANALYSIS
¶ 7 Mother's lone argument on appeal is that the State failed to prove by clear and convincing evidence that termination was in the best interests of C.D.P.F. Specifically, Mother claims the State failed to prove that she did not correct the condition leading to the deprived adjudication, in particular, the claim that she used drugs.
¶ 8 We find Mother's argument unpersuasive. The jury heard extensive testimony and received considerable other evidence that would have allowed them to make an informed determination on the question of whether termination was in the best interest of the child. The State presented evidence that Mother failed no less than three drug tests and refused countless other drug tests and that, because of this failure, Mother's driver's license had been revoked. The State further offered evidence that Mother failed to complete domestic violence counseling as well as the substance abuse treatment program ordered by the trial court.[4] Two DHS workers provided testimony at trial and, based on their involvement with Mother, both believed that termination of Mother's parental rights was in the best interest of C.D.P.F.[5]
¶ 9 Despite multiple positive drug tests, Mother maintains she did not use drugs. She claims the test results were false positives and even claimed to have paid for independent testing which resulted in one positive and one negative test. Mother argues DHS worked against her by urging her to do inpatient substance abuse treatment when to do so, she claims, would have caused her to lose her rental residence. A DHS worker testified that after one of Mother's positive test results Mother told her that she had accidentally ingested "blue pills" that she later learned contained methamphetamines. After another positive test result, a different DHS worker testified that Mother informed her that she must have tested positive as a result of licking her fingers after cleaning out a car where her relatives had used meth.
¶ 10 In Mother's favor, a surprise visit by the CASA worker indicated no evidence of drug use visible in the home. Mother also testified that she has two grown children who are professionally employed and an older teenage son who was a 4.0 student.
¶ 11 Although the State presented clear and convincing evidence of a drug problem, Mother refuses to admit any problem and refuses to seek the court-ordered help necessary to avoid the termination of her parental rights to C.D.P.F. The State met its burden at trial and a jury, after evaluating Mother's credibility first-hand, recommended the termination of Mother's parental rights. The trial court did not err in issuing the order of termination.

CONCLUSION
¶ 12 After canvassing the record in the instant matter to determine if the trial court's findings rest on the clear and convincing standard, we find sufficient evidence exists to terminate Mother's parental rights. *25 The verdict of the jury and the trial court's subsequent judgment are affirmed.
OPINION OF THE COURT OF CIVIL APPEALS VACATED AND THE RULING OF THE TRIAL COURT AFFIRMED.
CONCUR: EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, KAUGER, WATT, WINCHESTER, REIF, JJ.
DISSENTS: COLBERT, J.
NOTES
[1] Evidence in the record indicates that this charge was later dismissed but the grounds for its dismissal are not recorded.
[2] Father voluntarily terminated his parental rights.
[3] The Order of Disposition, filed August 21, 2007, provided that Mother must:

Provide a home that is safe, stable, and hygienic, with furniture and appliances suitable to meet the basic needs of the child;
a. Demonstrate the ability to provide a stable family environment that combines the appropriate support, nutrition, education, protection and nurturing;
b. The mother shall complete a substance abuse treatment program approved by said Department and not use unlawfully or abuse controlled dangerous substances, nor associate with those that do, and submit to random drug tests at the request of the Department of Human Services;
c. Complete a course of counseling approved by said Department designed to teach the impact of domestic violence on children, eliminate domestic violence from relationships and demonstrate they can put into practice that which is learned.
[4] Mother testified that she completed a six-week outpatient substance abuse course but offered no evidence of completion. In fact, Mother admitted that due to her failed drug test in January 2008, the facility called to inform her that she would need to complete a higher level of care. Mother refused.
[5] A CASA worker also gave a guarded opinion that termination was in the best interests of the child.